**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**In Re: NATIONALTRAVEL INSURANCE LITIGATION**          MDL No. <u>20-125</u>

---

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OF ACTIONS FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO
28 U.S.C. § 1407**

**TABLE OF CONTENTS**

I.   INTRODUCTION

II.   BACKGROUND AND RELEVANT FACTS

III.   LEGAL STANDARD

IV.   ARGUMENT

    A.  Transfer to a Single District for Consolidated Pretrial Proceedings is Appropriate Under 28 U.S.C. § 1407.

        i.   All Actions Involve Almost Identical Factual Allegations.

        ii.   Transfer Will Best Serve the Convenience of the Parties, the Witnesses, and the Judiciary.

    B.  Recent Panel Orders Suggest that Insurer-Specific MDLs Would Be Favorable Under Proper Circumstances.

    C.  The United States District Court for the Eastern District of Texas is the Most Appropriate Transferee Forum.

        i.   The Eastern District of Texas is Centrally Located.

        ii.   Transfer to the Eastern District of Texas Will Best Serve the Convenience of the Parties and Witnesses.

        iii.   The Eastern District of Texas is the Only District in which Multiple Actions are Pending.

        iv.   Judge J. Rodney Gilstrap is Experienced in Handling Complex Litigation Matters.

V.   CONCLUSION

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the U.S. Judicial Panel on Multidistrict Litigation, Movant, Plaintiff in the action captioned *Sheridan v. Assicurazioni Generali Group, S.p.A et al.,[1]* 2:20-cv-00244-JRG, currently pending in the United States District Court for the Eastern District of Texas, Marshall Division, respectfully submits this brief in support of this motion to transfer and coordinate at least seven Related Actions. Plaintiff's case arises out of Defendants' refusal to pay Plaintiff under a Generali-issued travel insurance policy that Plaintiff purchased upon checkout when booking travel accommodations through VRBO.com.

Plaintiff now seeks to consolidate all cases involving any similarly situated Plaintiffs who purchased Generali insurance plans accompanied by the policy and were prevented from taking a trip as a result of a covered event during the COVID-19 pandemic who have incurred out of pocket Trip Cancellation expenses. Transfer and coordination is appropriate, and Plaintiff requests that the Panel transfer all cases identified in the Schedule of Related Actions (the "Schedule") (attached hereto as **Exhibit A**), as well as subsequently filed tag-along actions, to the Eastern District of Texas, Marshall Division.

The Actions listed in the Schedule are putative class actions brought by consumers who paid a premium to purchase travel insurance. Each of these submitted claims to Generali for out of pocket Trip Cancellation expenses incurred when Plaintiffs were prevented from taking scheduled travel as a result of a covered event during the COVID-19 pandemic. To date, eight Actions have been filed against Generali. Each Action concerns the same standard form travel insurance policy sold to consumers by one insurance company in connection with online travel

bookings through VRBO.com and similar travel booking websites such as a HomeAway.com. The putative classes behind each Related Action are comprised solely of policy purchasers who elected to pay an optional, additional fee for travel insurance. None of the Related Actions concern consumers who did not purchase the policy.

As of the date of this filing, at least seven additional, identical Related Actions have been filed nation-wide. Centralization and coordination in the Eastern District of Texas will best further the objectives of Section 1407, which does not require that the transferee court sit in a district in which the case might have been filed under standard jurisdiction-and-venue analysis.

> The docket of the Eastern District of Texas indicates that centralization andcoordination in the District of Texas is appropriate. There are no pending MDL proceedings in the Eastern District of Texas, nor has it recently been assigned an MDL matter. Accordingly, Plaintiff respectfully requests the Related Actions be transferred to and coordinated in the Eastern District of Texas, Marshall Division.

## II. BACKGROUND AND RELEVANT FACTS

The questions of fact common to each Related Action on the Schedule are the very same questions of fact central to the core allegations in the Related Actions, which all arise out of virtually identical factual circumstances. Of paramount importance in distinguishing these insurance Actions from others arising from COVID-19 is each Related Action is against the same insurer. Generali is the United States branch of Assicurazioni Generali Group, S.p.A, an Italian corporation and insurance conglomerate with branches in countries across the globe. Through its subsidiary, Customized Service Administrators, Inc. ("CSA"), Generali issues its American customers a travel insurance policy (the "Policy") titled "CSA Travel Protection." *See* **Exhibit B**, The Policy. The CSA Travel Protection Policy at issue in all Related Actions is a standard form policy identified as "Policy Form series T001."

Generali contracted to indemnify Plaintiff for pecuniary and other losses and damages incurred as a result of "Covered Events"[1] that prevented her from taking her planned trip. Plaintiff has been completely denied reimbursement for her Claim. Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Generali breached the policy by failing to indemnify Plaintiff for the losses she incurred as a result of the forced cancellation of her travel plans due to a Covered Event. Plaintiffs in the Related Actions also submitted substantially similar claims under the Policy and received the same denials. Generali has caused substantial harm to hundreds, and perhaps thousands, of consumers by improperly refusing to issue reimbursement for trip cancellations explicitly covered by the Policy. Upon information and belief, Defendants have effectively adopted an approach to categorically issue denials to every Claim arising during the natural disaster that was brought on by COVID-19. Defendants refused to pay COVID-19 related trip cancellations by others insured under the Policy, whether said claimants submitted claims requesting indemnity for: (a) the Maximum Limit(s) Per Person or Plan for Trip Cancellation as listed on their respective Schedules of Benefits; (b) actual damages incurred due to trip cancellations; or (c) the price of the premiums initially paid by the insureds for Policies.

Generali, in "A Message to [their] Customers About Coronavirus," stated:

> As of January 29, 2020, the Coronavirus (COVID-19) outbreak was considered a foreseeable event. Consequently, any event(s) related to COVID-19 for all new travel policies purchased on or after January 29, 2020 may thereby be excluded in accordance with the terms and conditions of the Policy. In addition, there will be no coverage for COVID-19 related losses occurring on or after March 11, 2020, the date COVID-19 was formally declared a pandemic by the World Health Organization. Please note, our plans will not cover fear of travel. Customers are strongly encouraged to read their Description of Coverage or Insurance Policy (https://www.qeneralitravelinsurance.com/retrieve-policy.html) for details regarding their available coverage.

---

[1] The Policy contains a list of "Covered Events." If a trip cancellation is caused by a Covered Event as set forth in the Policy, Generali will be liable for reimbursing the Policy holder's expenses for the cancelled trip (detailed below in the Argument).

*See* **Exhibit C**, Generali COVID-19 Notice.

Each Related Action concerns the same Policy, issued by the same insurer, under which Plaintiffs filed the same Claims, which were all denied by Generali despite being covered Claims under Policy provisions. There are currently eight (8) Actions pending in seven (7) different federal districts across the U.S.

### III. LEGAL STANDARD

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to *any district* "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407 (emphasis added).

Pursuant to § 1407(a), transfer and centralization is appropriate where (1) the pending actions involve one or more common questions of fact; (2) transfer will aid the convenience of the parties, and 3) transfer will promote the just and efficient conduct of such actions. In these instances, transfer and centralization streamlines discovery, avoids conflicting rulings and scheduling issues, minimizes costs and conserves time and resources of the parties, witnesses and the courts. *See Manual For Complex Litigation* § 20.131 (4th ed. 2016).

In assessing whether transfer promotes justice and efficiency of pretrial proceedings, the Panel considers specific factors, including: the potential for conflicting rulings (particularly on class and FLSA certification); the number and location of the actions; the similarity of the cases' procedural postures; the potential for the duplication of discovery; the convenience of the parties, counsel, and witnesses; and the viability of informal coordination. See, e.g., id. at 1378–80; see also *In re Foot Locker, Inc. Fair Labor Standards Act (FLSA) & Wage & Hour Litig*., 787 F. Supp. 2d 1364, 1365 (J.P.M.L. 2011).

## IV. ARGUMENT

### A. Transfer to a Single District for Consolidated Pretrial Proceedings is Appropriate Under 28 U.S.C. § 1407.

The Related Actions meet the requirements for centralization under § 1407(a). All Related Actions share common questions of fact and law with little to no variation. The applicability of different legal principles will not prevent the transfer of an action under § 1407 if the requisite common questions of fact exist. *In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970).

### i.        All Actions Involve Almost Identical Factual Allegations.

Plaintiffs across all Related Actions make nearly verbatim allegations as to Defendants' breach of contract and all Actions seek declaratory relief. The claims and allegations at issue in each of the Actions stem from a breach of contract between Generali and the Plaintiffs. Liability in each of the Actions will thus turn on the same alleged questions of fact, detailed hereunder.

The Policy provides coverage for Trip Cancellation, among other travel plan protections. The Policy's Trip Cancellation Benefit Rider states:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, <u>if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip</u> to you or your Traveling Companion, while your coverage is in effect under this Policy.

"Covered Events" Under the Policy

Plaintiffs in all Related Actions assert arguments under one or both  of the Policy's Covered Events.

***1.***        *Inaccessible Accommodation Coverage*

The Policy lists the following item (hereinafter "Inaccessible Accommodations Coverage") under "Covered Events:"

<u>Your Accommodations at your destination made inaccessible</u> due to fire, flood, volcano,

earthquake, hurricane <u>or other natural disaster</u>. We will only pay benefits for losses occurring within 15 calendar days after the event renders the destination inaccessible. <u>For the purpose of this coverage, inaccessible means your Accommodations can not be reached by your original mode of transportation.</u> Benefits are not payable if the event occurs or if a hurricane is named prior to or on your Trip Cancellation Coverage Effective Date.

Due to the COVID-19 pandemic, the President officially approved declarations of disaster for various states . The President also, in declaring the pandemic a "national emergency," invoked the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq.*, which is the statutory authority for most federal disaster response activities. The President's Disaster Relief Fund, managed by FEMA, is used to fund various "disaster assistance programs." Most states' disaster declarations had been officiated as of the date of the trip cancellations at issue in each Actions.

### 2.     *Quarantine Coverage*

Further, the Covered Events specifically provide for coverage in the event of "Being hijacked or Quarantined," and "Quarantine" *is* a defined term set forth in the  Policy and stated specifically as follows: "QUARANTINE means the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

Putative class action Plaintiffs, all Policy holders, have filed overlapping class action complaints against Generali alleging that, by its conduct, it breached the terms of the Policy. Liability in each of the Actions will thus turn on the same alleged questions of fact, including, but not limited to:

  i.   Whether trip cancellations caused by the COVID-19 outbreak triggered covered events under the Policy; including, but not limited to, the Inaccessible Accommodation Coverage or the Quarantine Coverage;

  ii.   Whether the Policy exclusion regarding "travel restrictions imposed for a certain

area by governmental authority"[2] negates Plaintiffs' Claims; and

iii. Whether the COVID-19 outbreak was considered a foreseeable event as of January 29, 2020;

The Actions broadly allege the same core facts: (1) Plaintiffs all purchased the same Policy from the same insurer, Generali; (2) Generali issued the Policy to Plaintiffs who opted to purchase the Policy in addition to and in connection with their travel bookings on various travel-related websites; (3) the Policy is a valid and enforceable contract between Generali and each Plaintiff; (4) Plaintiffs substantially performed their obligations pursuant to the terms of the Policy; (5) Plaintiffs cancelled their trips for reasons that constitute Covered Events as set forth in the Policy; (6) the provisions under the Policy's General Exclusions do not inevitably render all COVID-19-related trip cancellations uncovered; and (7) Generali failed to compensate Plaintiffs for their respective losses as required by their policies.

**ii.     Transfer Will Best Serve the Convenience of the Parties, the Witnesses, and the Judiciary.**

Transfer will: (i) eliminate duplicative discovery; (ii) avoid inconsistent pretrial rulings and schedules; (iii) conserve the resources of parties, counsel, and courts; (iv) hasten progress in all actions; and (v)promote the prospect of settlements. Centralization will not only eliminate the risk of inconsistent rulings on pivotal, identical issues common to all Actions, but will also eliminate any potential risk of inconsistent rulings on class certification. Furthermore, the efficiency of coordinated or consolidated pretrial proceedings is unmatched. Surely, centralization will streamline pretrial proceedings in a way that cannot be achieved by informal coordination. Here, circumstances do not necessitate informal coordination or other alternative methods to

---

[2] *See* **Exhibit A**, The Policy p. 10.

centralization. Centralization is especially warranted in these Actions, as they all involve the same

defendant, facing the same allegations, which are based on the same issues.

Due to the number of cases spread across at least seven jurisdictions indicates that, absent

centralization, it may be essentially unavoidable that all parties will be subject to inconsistent

pretrial rulings. Many more actions will likely be identified as tag-alongs in addition to the eight

pending Actions in this litigation, making a compelling case for centralization. The exact number

of potential plaintiffs will remain unknown until the discovery process begins. Generali possesses

the data to determine a numerical figure to indicate the Policies sold throughout the U.S. that have

resulted in myriad Claims  received from consumers who could be parties to these Actions.

Plaintiff has reasonable belief that there are thousands of potential members in the Class. Generali

states on its website that it has a presence in 50 countries in the world and earned a total premium

income in excess of   € 69.7 billion (approximately $80 billion) in 2019, serving 61 million

customers worldwide.[3] This Panel has previously held that a number of procedurally similar

actions will make the case for centralization compelling, and has routinely ordered centralized

proceedings in cases involving even fewer lawsuits. *See In re: Boehringer Ingelheim Pharm., Inc.,*

*Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (U.S. Jud. Pan. Mult. Lit.

2011); *In re: Fontainebleau Las Vegas Contract Litig.*, 657 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan.

Mult. Lit. 2009) (centralizing proceedings for litigation involving only *two* actions filed in separate

districts); *In re Mobile Telecommunications Techs., LLC Patent Litig.*, 222 F. Supp. 3d 1337 (U.S.

Jud. Pan. Mult. Lit. 2016) (granting transfer motion consisting of fourteen actions pending in two

districts); *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d 1361,

1362 (U.S. Jud. Pan. Mult. Lit. 2016) (ordering centralized proceedings for litigation involving

---

[3] https://www.generali.com

eighteen actions pending in eighteen districts); *In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2013) (centralizing six actions pending in six districts); *In re Anheuser-Busch Beer Labeling Marketing and Sales Practices Litigation*, 949 F. Supp. 2d at 1369 (centralizing seven actions pending in five districts); *In re: 5-Hour Energy Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1357 (U.S. Jud. Pan. Mult. Lit. 2013) (centralizing nine actions pending in eight districts); *In re Fosamax Products Liab. Litig.*, 444 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006) (granting transfer motion for litigation involving eighteen actions in five districts).

B. **Recent Panel Orders Suggest that Insurer-Specific MDLs Would Be Favorable Under Proper Circumstances.**

Following this Panel's recent July 2020 hearing, motions to centralize in *In re: StubHub Refund Litigation*[4] and in *In re: COVID-19 Business Interruption Protection Insurance Litigation*[5] both received partial denials.

In *In re: StubHub Refund Litigation.*, six overlapping putative class actions pending in four different District Courts all alleged that the five defendants, big competitors in the secondary event ticketing market, uniformly refused to offer required refunds for events disrupted by the Covid-19 pandemic. This Panel noted "few efficiencies to be gained by creating an industry-wide MDL that combines claims against Vivid Seats and SeatGeek [industry competitors] with claims against Stubhub [a much larger industry competitor],"[6] adding that they are "typically skeptical of requests

---

[4] *See* **Exhibit E**, Transfer Order, MDL No. 2951 (J.P.M.L. Jul. 30, 2020), ECF No. 772.
[5] *See* **Exhibit F**, Order Denying Transfer and Directing Issuance of Show Cause Orders, MDL No. 2942 (J.P.M.L. Jul. 30, 2020), ECF No. 36.
[6] *Supra* note 4 at 1.

centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses."[7]

Unlike in *In re: StubHub Refund Litigation*, where five defendants were all separate businesses with separate positions, separate contractual provisions, and separate alleged misconduct in carrying out industry business practices, here, there is one single defendant taking one position on the provisions and application of one policy, and one course of conduct that forms the basis of all Actions.

In *In re: COVID-19 Business Interruption Protection Insurance Litigation*, issues surrounding multiple defendants who are industry competitors were also raised, but in a manner of much greater magnitude than in *In re: StubHub Refund Litigation*. Regarding the business interruption MDL, this Panel determined whether coordination of hundreds of business interruption cases against thirty-two (32) defendant insurers was appropriate for centralization. Like the decision as to the *Stubhub* actions, the Panel denied motions for centralization of most, but not all, actions. The Panel found that the "core questions" which the movants identified as predominant across all actions shared "only a superficial commonality," stating:

> There is no common defendant in these actions—indeed, there are no true multidefendant cases, as the actions involve either a single insurer or insurer-group (i.e., related insurers operating under the same umbrella or sharing ownership interests). Thus, there is little potential for common discovery across the litigation. Furthermore, these cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states. These differences will overwhelm any common factual questions.[8]

Here, in stark contrast, the above-stated issues are entirely absent.

---

[7] *Supra* note 4 at 1-2.
[8] *Supra* note 5 at 3-4.

In the business interruption MDL order, the Panel disfavored the notion of creating regional or state-based MDLs, or industry-wide MDLs. Regarding insurer-specific MDLs, however, they stated:

> Such an MDL would be limited to a single insurer or group of related insurers and thus would not entail the managerial problems of an industry-wide MDL involving more than a hundred insurers. The actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions. Thus, there is a significant possibility that the actions will share common discovery and pretrial motion practice. Moreover, centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face. An insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by Section 1407.

The Related Actions at issue in the case at hand create a prime opportunity for an exemplary display of the effectiveness of a properly organized insurer-specific MDL that is not industry-wide and is not capable of being littered with various policy-specific disputes. An MDL concerning the same Policy, issued by the same insurer, under which all plaintiffs filed the same Claims, which were all denied despite being covered Claims under Policy provisions.

## C. **The United States District Court for the Eastern District of Texas is the Most Appropriate Transferee Forum.**

Transfer to the Eastern District of Texas is appropriate given its centralized geographic location; there are multiple pending Actions within this specific district; Judge Gilstrap is an ideal fit to handle this MDL; and he presides in a district with no current MDLs pending.

The requirements of Section 1407 are satisfied here because all Related Actions referenced in the Schedule arise from the same operative facts. The plaintiffs and members in all Actions also overlap significantly, as the factual allegations central to each Action and common among all Actions are virtually identical. Plaintiffs in all Actions purchased the Policy as an additional option upon checkout when booking online travel accommodations. Generali has refused to issue any refunds for expenses incurred due to travel cancellations caused by Covered Events under the Policy,

and all Plaintiff seek to recover under the same legal theories. Because the Related Actions seek to certify overlapping classes, centralization will guard against inconsistent rulings and inconsistent class determinations.

Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendants breached the policy by failing to indemnify Plaintiff for the losses she incurred as a result of the forced cancellation of her travel plans due to a Covered Event. *See In re U. S. Fin. Sec. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("the prevalence of common factual issues and similar class allegations necessitates transfer of all Actions to a single district for coordinated or consolidated pretrial proceedings under Section 1407 in order to prevent duplication of discovery and eliminate the possibility of inconsistent or overlapping class determinations."). Further, not only are the factual allegations pled almost identically in each Related Action, but also there is one single defendant involved. A transferee judge should undoubtedly find the Related Actions feasible to coordinate.

### i.   The Eastern District of Texas is Centrally Located.

The major parties, documents, and witnesses are currently scattered in different locations throughout the U.S., further necessitating centralization. There is no consistency amongst the Plaintiffs' predominant locations. The various transferor courts where the Related Actions are pending all sit in geographically disparate locations, rendering such forums significantly more inconvenient for at least one or more parties. The respective locations of the multiple Generali U.S. entities, named defendants in this litigation, are also scattered throughout the U.S. in geographically disparate The Eastern District of Texas is convenient as a neutral, centrally located transferee forum.

### ii.   **Transfer to the Eastern District of Texas Will Best Serve the Convenience of the Parties and Witnesses.**

At present, there are eight (8) Actions pending in seven (7) different federal districts across the U.S. All Related Actions are essentially of equal procedural posture at this time. The geographic nature of the Actions, in addition to their early procedural postures, weighs heavily in favor of centralization. All Actions are against Generali; thus, the focus on party location shifts primarily to the Plaintiffs' locations.

Centralization of the Related Actions benefit the MDL treatment can afford Generali several advantages as well. It lessens the overall costs of defense litigation and significantly enhances the potential for a global settlement resolution. Because counsel for all plaintiffs are to coordinate their discovery efforts, Generali can avoid issues related to receiving endless identical discovery requests, or repeatedly tendering the same witnesses for deposition. Unlike the "first to file" or other such strategies, the goal of MDL treatment is to gather all cases for streamlined pretrial proceedings. For these reasons, the geographic proximity of the potential forum to the parties and witnesses is a key consideration, and MDL treatment has been a traditionally effective approach to situations involving overlapping class actions, such as this case.

MDL treatment is particularly appropriate where, as here, cases involve overlapping class actions. *See, e.g., In re Amazon.com*, 999 F. Supp. 2d at 1376.  As discussed, factors weigh heavily in favor of transfer and centralization of the Related Actions in the Eastern District of Texas. Texas provides for a neutral, centrally located venue that is easily accessible for all parties involved; additionally, the geographical importance for convenience purposes is slightly minimized in present times, as Zoom depositions and virtual hearings become increasingly more common. This MDL is unique in that there is no single situs of common disaster, as COVID-19 is a worldwide

pandemic. None of the injuries to plaintiffs in any Action can be assigned any specific situs of injury because the losses are purely economic in nature.

### iii. **The Eastern District of Texas is the Only District in which Multiple Actions are Pending.**

The only federal district in which more than one Action is pending is the Eastern District of Texas. The remaining six Actions are each pending in different federal districts in the following states: South Carolina, California, Ohio, Illinois, Kansas, and New York.[9] Further, the status of the civil docket of the Eastern District of Texas makes it the ideal forum for centralization because there are no pending MDLs in the district. [10]

The civil dockets statuses of the transferor courts are far less favorable. There are twenty (20) pending MDLs Central District of California, eighteen (18) pending MDLs in the Southern District of New York, and ten (10) pending MDLs in the Northern District of Illinois. The Districts of Kansas and of South Carolina are each currently assigned three (3) MDLs. While the Northern District of Ohio is the only district in this litigation where, like the Eastern District of Texas, no MDLs are currently pending, the Eastern District of Texas is still the only district in which multiple Actions are pending.[11]

The Judicial Panel on Multidistrict Litigation should transfer the eight virtually- identical and potentially overlapping class actions, filed in seven different federal courts, to the Hon. Rodney Gilstrap of the U.S. District Court for the Eastern District of Texas. The actions all involve the same breach of contract claims. Without consolidation in one transferee court, there exists a

---

[9] *See* Schedule of Related Actions.
[10] *See* **Exhibit D,** Pending MDL Dockets by District (7.16.2020).
[11] *Supra*.

significant threat of overlapping classes, inconsistent rulings and results, gross inefficiency among many federal courts, and prejudice to Generali caused by duplicative motions practice and discovery.

### iv. Judge J. Rodney Gilstrap is Experienced in Handling Complex Litigation Matters.

Judge Rodney Gilstrap has nearly a decade of experience as a federal judge. Before Judge Gilstrap was appointed to the federal bench in 2011 by President Obama, he served as a Harrison County, Texas Judge from 1989 to 2002.[12]

In 2019, Judge Gilstrap made headlines after issuing an order that created "a first-of-its-kind rule that attorneys say appears designed to streamline cases."[13] A 2019 Law360 article, titled "Gilstrap Changes Playing Field With Patent Eligibility Rule," reads:

> Judge Rodney Gilstrap, the chief judge in the district who oversees a sizable portion of the nation's patent cases, has issued an order requiring accused infringers early in litigation to outline, in detail, any arguments they intend to make regarding patent eligibility…
> 'The Eastern District was the original pioneer on patent local rules, and it looks like they're stepping forward again to help streamline patent litigation,' said Wayne Stacy of Baker Botts LLP.
> The rule, which applies to any patent case assigned to Judge Gilstrap, could require defendant companies in some situations to change their approach, laying out detailed, fact-based eligibility contentions sooner than they might have otherwise planned, attorneys said.[14]

---

[12] Michael Smith, *Judge Rodney Gilstrap of Marshall Named for Eastern District Judgeship | Eastern District of Texas Federal Court Practice.* (May 19, 2011) http://mcsmith.blogs.com/eastern_district_of_texas/2011/05/judge-rodney-gilstrap-of-marshall-named-for-eastern-district-judgeship.html (last visited Aug. 14, 2020).

[13] Matthew Bultman, *Gilstrap Changes Playing Field With Patent Eligibility Rule | Law360* (Aug. 14, 2019, 7:44 PM EDT) https://www.law360.com/articles/1188573/gilstrap-changes-playing-field-with-patent-eligibility-rule (last visited Aug. 14, 2020).

[14] *Supra*.

Judge Gilstrap not only has deep experience in handling complex actions; but also, in doing so, has displayed a remarkably innovative approach to the organizational aspects thereof, strongly indicating that he will efficiently oversee the coordination of these Actions. Judge Gilstrap is the ideal candidate for transferee judge in this litigation.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Panel enter an Order transferring the Related Actions to the Eastern District of Texas.

Dated: August 14, 2020

By:  /s/ Derek H. Potts
Derek H. Potts
Texas State Bar No. 24058657
**THE POTTS LAW FIRM, LLP**
3737 Buffalo Speedway, Suite 1900
Houston, TX 77098
Telephone: 713.963.8881
dpotts@potts-law.com

**ATTORNEY FOR PLAINTIFF**
