BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GENERALI COVID-19 RELATED TRAVEL INSURANCE LITIGATION | MDL No. 2968 |

**GENERALI'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................ 1

II.    Background ................................................................................................. 3

III.    The Panel Should Not Create An MDL Here ......................................... 4

     A.    Movants Have Failed To Demonstrate Sufficient Common Questions Of Fact To Warrant Creation Of An MDL ....................... 4

         1.    Insurance Coverage Actions, Including The Pending Actions Against Generali, Are Not Well-Suited To Transfer And Consolidation Because There Are Insufficient Common Factual Issues Across The Cases ............................................... 5

         2.    Plaintiffs Will Have To Prove Individualized Facts .................. 9

     B.    An MDL Will Not Be More Convenient For Parties And Witnesses ................. 12

     C.    An MDL Would Not Promote The Just And Efficient Conduct Of The Cases ....................................................................................... 15

         1.    An MDL Will Not Eliminate Duplicative Discovery Because The Vast Majority Of Discovery Will Be Plaintiff-Specific ........................ 15

         2.    An MDL Will Not Avoid Conflicting Rules And Schedules ................. 16

         3.    An MDL Will Not Reduce Litigation Costs Or Conserve The Time And Effort Of The Parties, Attorneys, Witnesses, And Courts .............. 18

IV.    If The Panel Creates An MDL, Transfer To The Southern District of New York, Not The Eastern District Of Texas, Is Appropriate ......................................... 18

V.    Conclusion ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re: 5-hour Energy Marketing and Sales Practices Litigation*,
949 F. Supp. 2d 1357 (J.P.M.L. 2013).......................................................................14

*In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*,
448 F. Supp. 271 (J.P.M.L. 1978)..........................................................................4, 12

*In re ABA Law Sch. Accreditation Litig.*,
325 F. Supp. 3d 1377 (J.P.M.L. 2018)........................................................................7

*In re: Aegon USA, Inc. v. Suppl.Cancer Ins. Litig.*,
571 F. Supp. 2d 1369 (J.P.M.L. 2008)........................................................................8

*In re: Anheuser-Busch Labeling Marketing & Sales Practices Litigation*,
494 F. Supp. 2d 1371 (J.P.M.L. 2013)......................................................................14

*In re AOL Time Warner, Inc. Sec. Litig.*,
235 F. Supp. 2d 1380 (J.P.M.L. 2002)......................................................................15

*In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig.*,
293 F. Supp. 3d 1380 (J.P.M.L. 2018)......................................................................17

*In re: Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)........................................................................4

*In re: Boehringer Ingelheim Pharm., Inc. Fair Labor Standards Act (FLSA)
Litigation*
763 F. Supp. 2d 1377 (J.P.M.L. 2011)......................................................................14

*In re: Chinese-Manufactured Drywall Prod. Liab. Litig.*,
626 F. Supp. 2d 1346 (J.P.M.L. 2009)......................................................................19

*In re Clean Water Rule: Definition of "Waters of the United States"*,
140 F. Supp. 3d 1340 (J.P.M.L. 2015)........................................................................7

*In re: ClearTalk-ZTE Arbitration Litig.*,
24 F. Supp. 3d 1374 (J.P.M.L. 2014).................................................................2, 4, 5

*In re: COVID-19 Bus. Interruption Prot. Ins. Litig.*,
2020 WL 4670700 (J.P.M.L. Aug. 12, 2020)...............................3, 6, 8, 12, 15, 16

*In re: Credit Union Checking Account Overdraft Litig.*,
158 F. Supp. 3d 1363 (J.P.M.L. 2016)........................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re: Crest Sensitivity Treatment & Protection Toothpaste Mktg. & Sales
   Practices Litig.*,
   867 F. Supp. 2d 1348 (J.M.P.L. 2012)...........................................................17, 18

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
   190 F. Supp. 3d 1361 (J.P.M.L. 2016).................................................................14

*In re Dometic Corp. Gas Absorption Refrig. Prods. Liab. Litig.*,
   285 F. Supp. 3d 1358 (J.P.M.L. 2018)...........................................................16, 17

*EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*,
   845 F.3d 1099 (11th Cir. 2017) ...........................................................................7

*In re Florida, Puerto Rico, & U.S. Virgin Islands 2016 and 2017 Hurricane
   Seasons Flood Claim Litigation*,
   325 F. Supp. 3d 1367 (J.P.M.L. 2018).........................................................4, 5, 11

*In re Fontainebleau Las Vegas Contract Litigation*,
   657 F. Supp. 2d 1374, (J.P.M.L. 2009)...............................................................14

*In re Fosamax Prods. Liab. Litig.*,
   444 F. Supp. 2d 1347 (J.P.M.L. 2006).................................................................14

*In re The Great West Casualty Co. Insurance Litigation*,
   176 F. Supp. 3d 1371 (J.P.M.L. 2016).........................................................6, 12, 16

*In re: Healthextras Ins. Mktg. & Sales Practices Litig.*,
   24 F. Supp. 3d 1376 (J.P.M.L. 2014).............................................................5, 15

*In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*,
   388 F. Supp. 574 (J.P.M.L. 1975)........................................................................8

*In re Hotel Indus. Sex Trafficking Litig.*,
   433 F. Supp. 3d 1353 (J.P.M.L. 2020)...................................................................7

*In re Mobile Telecommcn's Techs., LLC Patent Litig.*,
   222 F. Supp. 3d 1337 (J.P.M.L. 2016).................................................................14

*In re Monsanto PCB Water Contamination Litig.*,
   176 F. Supp. 3d 1379 (J.P.M.L. 2016).........................................................11, 12

*In re: Mortgage Lender Force-Placed Ins. Litig.*,
   895 F. Supp. 2d 1352 (J.P.M.L. 2012)..................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Not-For-Profit Hosp./Uninsured Patients Litig.*,
341 F. Supp. 2d 1354 (J.P.M.L. 2004)..........................................................................4

*In re: Paycheck Protection Program (PPP) Agent Fees Litig.*,
2020 WL 4673430 (J.P.M.L. Aug. 5, 2020) ..............................................................4

*In re Pharm. Benefit Plan Adm'rs Pricing Litig.*,
206 F. Supp. 2d 1362 (J.P.M.L. 2002)........................................................................4

*In re Prevagen Prods. Mktg. & Sales Practices Litig.*,
283 F. Supp. 3d 1379 (J.P.M.L. 2017)......................................................................17

*In re Rely Tampon Prods. Liab. Litig.*,
533 F. Supp. 1346 (J.P.M.L. 1982)...........................................................................12

*In re: Rite Aid Corp. Wage & Hour Emp't Practices Litig.*,
655 F.Supp.2d 1376 (J.P.M.L. 2009).........................................................................16

*In re: SFPP, L.P., R.R. Prop. Rights Litig.*,
121 F. Supp. 3d 1360 (J.P.M.L. 2015).........................................................................7

*In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*,
273 F. Supp. 3d 1357 (J.P.M.L. 2017)......................................................................17

*In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*,
1988 U.S. Dist. LEXIS 17043 (J.P.M.L. May 31, 1988)............................................5

*In re: U.S. Navy Variable Reenlistment Bonus Litig.*,
407 F. Supp. 1405 (J.P.M.L. 1976).............................................................................4

*In re: United Healthcare Servs., Inc. Harvoni (Ledipasvir and Sofosbuvir) Health
Ins. Litig.*, 222 F. Supp. 3d 1339 (J.P.M.L. 2016) ..................................................16

*In re Veroblue Farms USA, Inc.*,
2020 WL 581888 (J.P.M.L. Feb. 5, 2020).................................................................7

*In re White Consol. Indus., Inc., Envtl. Ins. Coverage Litig.*,
1994 WL 52568 (J.P.M.L. Feb. 16, 1994)..................................................................5

**Statutes**

28 U.S.C. § 1407...............................................................................................................3, 4

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Other Authorities**

2 Couch on Insurance § 21:3 (3d ed. 2019) ....................................................................7

## I.    Introduction

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, defendants Assicurazioni Generali Group, S.p.A, Generali Global Assistance, Inc., Generali U.S. Branch, and Customized Services Administrators, Inc. d/b/a Generali Global Assistance & Insurance Services (together, "Generali") hereby submit this response in opposition to movant Tralisa Sheridan's motion to transfer and coordinate eight pending actions, and any subsequently filed tag-along actions, against Generali concerning travel insurance coverage litigation relating to the COVID-19 pandemic.[1]

These actions do not warrant MDL treatment for several reasons.  *First*, although movant points to eight cases, two of them (*Sheridan* and *Sanchez*) are near-identical cases filed by the same law firm, and four of them (*Sheridan*, *Sanchez*, *Paterson*, and *Flanigan*) are, as explained below, the result of coordination among plaintiffs' counsel in an effort to artificially inflate the case count.  Movant might argue that these cookie-cutter complaints (see Exs. A, C, D, and E) are similar simply because the complaints in *Paterson*, *Flanigan*, and *Sanchez* were modeled on the previously-filed *Sheridan* complaint.  But there is no doubt that these cases reflect a joint effort: that is why, for example, the *Paterson* complaint, which was filed one day *before* the *Flanigan* complaint, refers to "Plaintiff **Amy Flanigan** . . . residing in the City of Copper Canyon in Denton County Texas" (MB Dkt. 2-16 ¶ 3); Paterson's counsel could not have known about Flanigan and where she lives without prior coordination with Flanigan's counsel.  The Panel should reject this gamesmanship.  In any event, the pre-existing cooperation by plaintiffs' counsel makes clear that

---

[1]    "MB" refers to movant's brief (Dkt. 2-1).  "Ex. __" refers to the exhibits attached to the Declaration of Bronwyn F. Pollock ("Pollock Decl.") submitted in support of this response in opposition.

there is no need for MDL treatment because informal coordination among these lawyers would suffice to ensure that pre-trial proceedings are streamlined.

**Second**, the coverage actions against Generali fail to satisfy the requirements of Section 1407. The MDL statute requires that actions to be centralized "involve[e] one or more common questions of fact," and that centralization "will be for the convenience of parties and witnesses" and "will promote the just and efficient conduct of such actions." Centralization here would satisfy none of these requirements. Although movant asserts that the actions share a number of "core" issues of facts, most (if not all) of those issues really are issues of law. And the Panel has long recognized that "the resolution of purely a legal issue or issues [] is generally insufficient to warrant centralization." *In re ClearTalk-ZTE Arbitration Litig.*, 24 F. Supp. 3d 1374, 1375 (J.P.M.L. 2014). Thus, the Panel repeatedly has denied motions to transfer insurance coverage actions— which principally involve legal issues—into an MDL. These cases are no different.

In reality—and contrary to movant's assertions—the cases alleged against Generali present many more factual differences than commonalities. These differences include:

- the manner in which customers purchased the policies;

- when customers purchased the policies;

- wide variations in the time, location, and methods of travel related to the planned trips;

- the different state and local COVID-19 orders and guidances allegedly affecting plaintiffs' varying trips and individual travel plans;

- the facts and circumstances related to any trip cancellation;

- whether or not plaintiffs or their family members were subject to required self-isolation;

- the particular claims that were submitted to Generali; and

2

- the nature of the individualized alleged losses.

As these factors make clear, the vast majority of discovery in these cases will be inherently plaintiff- and locality-focused, so these factual differences will overwhelm any possible convenience or efficiencies that supposedly might be achieved by centralization.

Finally, in the event that the Panel nevertheless concludes that these cases do warrant MDL treatment, Generali respectfully submits that the cases should be transferred to the Southern District of New York, where Generali's U.S. business is headquartered.

## II.    Background

This Panel previously considered, and rejected, requests to create an industry-wide MDL for COVID-19-related business interruption protection insurance litigation.  *See In re: COVID-19 Bus. Interruption Prot. Ins. Litig.* ("*In re COVID BI*"), 2020 WL 4670700, at *2-3 (J.P.M.L. Aug. 12, 2020).

Two days after the Panel issued its decision in *In re COVID BI*, movant (the plaintiff in *Sheridan*) filed her motion to transfer and consolidate the pending actions against Generali for travel insurance coverage disputes related to COVID-19.  Movant argues that eight putative nationwide class actions pending in six districts warrant centralization under Section 1407 because, in each action, the plaintiff allegedly purchased a purportedly uniform trip cancellation insurance policy from Generali, allegedly canceled his/her trip due to a COVID-related travel restriction, filed a claim under the relevant policy, and was subsequently denied coverage.[2]  MB 7-9.

---

[2]     As of the date of this submission, two additional lawsuits have been filed against Generali: *Oglevee v. Generali US Branch*, No. 2:20-cv-1277 (W.D. Pa.); *Swafford v. Generali US Branch*, No. 1:20-cv-7079 (S.D.N.Y.) (notice of related action at MDL 2968, Dkt. 27).

**III.    The Panel Should Not Create An MDL Here.**

Under Section 1407, the Panel considers three factors when determining whether to centralize pretrial proceedings:  (1) whether the actions involve "one or more common questions of fact"; (2) "whether the transfer would be for "the convenience of parties and witnesses"; and (3) whether the transfer would "promote the just and efficient conduct of such actions."  Each of these factors confirms that the Panel should not create an MDL here.

**A.    Movants Have Failed To Demonstrate Sufficient Common Questions Of Fact To Warrant Creation Of An MDL.**

To warrant centralization, it is not enough for movants to show some "common legal questions and, perhaps, a few factual questions."  *In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002).  Without sufficient common questions of ***fact***, transfer is inappropriate.  *See In re Not-For-Profit Hosp./Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1356 (J.P.M.L. 2004).  The party seeking transfer bears "a heavy burden to show that [the] common questions of fact are sufficiently complex and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407."  *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978).  That burden is even greater when, as here, there is only a relative handful of cases.  *See In re: Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).

Finally, it is well-established that "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."  *In re: Paycheck Protection Program (PPP) Agent Fees Litig.*, 2020 WL 4673430, at *2 (J.P.M.L. Aug. 5, 2020); *accord In re U.S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1406 (J.P.M.L. 1976); *In re ClearTalk-ZTE*, 24 F. Supp. 3d at 1375.

For the reasons we explain, case-specific factual questions overwhelm any common issues

of fact that may be present in these cases.

> **1.    Insurance Coverage Actions, Including The Pending Actions Against Generali, Are Not Well-Suited To Transfer And Consolidation Because There Are Insufficient Common Factual Issues Across The Cases.**

Movant suggests that transfer is appropriate here because plaintiffs in the pending actions purchased the "same Policy." MB 6. That is an overstatement. In fact, the policies are not identical as to each of the plaintiffs—much less members of the proposed nationwide classes.[3] And the existence of some similarly worded contractual terms does not create common issues of fact supporting consolidation. That is for a simple reason: at the heart of each case is the legal question whether the plaintiff's individual policy terms provide coverage for the plaintiff's individual claim under applicable state law. Indeed, insurance coverage actions typically present questions of law. As Judge Perry observed with respect to insurance coverage litigation during the Panel's hearing on the business interruption cases, "usually it's a matter of cross-motions for summary judgment and decide the legal issues, and there's not much discovery." Hr'g at 28, *In re COVID BI*, (J.P.M.L. July 30, 2020), Dkt. 782. For that reason, the Panel frequently has held that insurance coverage actions are unsuitable for transfer under § 1407 because such actions involve (at most) common questions of law rather than common questions of fact. *See, e.g.*, *In re: Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1376 (J.P.M.L. 2014) (denying centralization because "the key issue in all cases is legal in nature"); *In re ClearTalk-ZTE*, 24 F. Supp. 3d at 1375.

In fact, in the last 25 years, just two MDLs have been formed to resolve insurance coverage

---

[3]    *See, e.g.*, Compare Travel Plans, Generali Global Assistance (last accessed Sept. 8, 2020), *available at* https://www.generalitravelinsurance.com/view-travel-insurance-plans.html.

claims.[4]  Other than these two proceedings, the Panel has, for the most part, declined to centralize coverage actions, including against a single insurer.  For example, in *In re Florida, Puerto Rico, & U.S. Virgin Islands 2016 and 2017 Hurricane Seasons Flood Claim Litigation*, the plaintiffs sought to centralize cases pending in different states in which they alleged that they suffered property damage as the result of hurricanes and that their respective insurance companies breached the terms of the policies by settling claims for amounts lower than plaintiffs' actual losses.  The Panel denied centralization, concluding that, while the actions had a "superficial factual commonality," "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages."  325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018).  And in *In re The Great West Casualty Co. Insurance Litigation*, the Panel denied the plaintiff's motion to transfer actions against a single insurer because the actions "involve no common factual issues aside from the broad fact that, in each action, a common insurance company has denied coverage of an insurance claim."  176 F. Supp. 3d 1371, 1371 (J.P.M.L. 2016).

The proposed MDL here similarly is inappropriate for transfer.  The cases involve policies "purchased by different [insureds] . . . located in different states," and because the member cases are putative nationwide class actions, they will need to be evaluated under "the laws of fifty states."  *In re COVID BI*, 2020 WL 4670700, at *2 & n.6.  Such factors weigh against centralization.  *Id.*; *see also In re: Mortgage Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 & n.2

---

[4]      In the first case, this Panel centralized two actions because "the issue presented in both actions is whether Texas Eastern is entitled to liability insurance coverage for contamination of waste sites along its pipeline system."  *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 1988 U.S. Dist. LEXIS 17043, at *2 (J.P.M.L. May 31, 1988).  In the other, this Panel centralized, *at the insurers' request*, two actions that involved "the same parties, the same insurance policies, and the same allegations by [the policyholder] that its actual or potential liabilities for environmental contamination are covered."  *In re White Consol. Indus., Inc., Envtl. Ins. Coverage Litig.*, 1994 WL 52568, at *1 (J.P.M.L. Feb. 16, 1994).

(J.P.M.L. 2012) (denying industry-wide and bank-specific centralization because "individualized discovery *and legal issues* are likely to be numerous and substantial") (emphasis added).

Movant argues that the pending actions "turn on the same alleged questions of fact" including "[w]hether trip cancellations caused by the COVID-19 outbreak triggered covered events under the Policy"; "[w]hether the Policy exclusion regarding 'travel restrictions imposed for a certain area by [a] governmental authority' negates Plaintiffs' Claims"; and "[w]hether the COVID-19 outbreak was considered a foreseeable event as of January 29, 2020."   MB 8-9. Movant contends that there are several other purported "core facts" common among the pending actions, including that "the Policy is a valid and enforceable contract between Generali and each Plaintiff"; "Plaintiff substantially performed their obligations pursuant to the terms of the Policy"; and "Generali failed to compensate Plaintiffs for their respective losses as required by their policies."  MB 9.

The problem for the movant is that these are all *legal,* not factual, issues.  It has long been recognized that the interpretation of insurance policy language is a legal question.  *See* 2 Couch on Ins. § 21:3 (3d ed. 2019).  And based on such legal questions, Generali already has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) in two of the member cases (*Nixon,* Dkt. 21, and *Morris*, Dkt. 14) and anticipates filing motions to dismiss in the remaining actions.  Plain and simple, legal issues do not support transfer, because "[s]eeking a uniform *legal* determination . . .is not a sufficient basis for centralization."  *In re: SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015).  The Panel has consistently applied this well-established principle.[5]

---

[5]     *See, e.g.*, *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020); *In re Veroblue Farms USA, Inc.*, 2020 WL 581888, at \*2 (J.P.M.L. Feb. 5, 2020); *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018); *In re Clean*

Movant also appears to argue that whether "Plaintiffs cancelled their trips for reasons that constitute Covered Events as set forth in the Policy" is a common factual issue.  MB 8.  But what counts as a "Covered Event" under particular insurance policy language is a legal issue:  "An insurance policy is a contract and therefore interpretation of the language in such a policy constitutes a ruling on a question of law . . . ."  *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017).  The Panel previously recognized that when actions primarily involve the proper interpretation of a contract term, transfer is inappropriate.  *See In re: Aegon USA, Inc. v. Suppl.Cancer Ins. Litig.*, 571 F. Supp. 2d 1369, 1370 (J.P.M.L. 2008) ("The seven actions in this litigation primarily involve the proper interpretation of the term 'actual charges' . . . The key issue is thus legal, rather than factual"); *In re: Credit Union Checking Account Overdraft Litig.*, 158 F. Supp. 3d 1363, 1363 (J.P.M.L. 2016) (denying transfer for actions which were "essentially breach of contract cases . . . brought under the laws of at least nine states").  And the facts relevant to that legal coverage analysis vary from policyholder to policyholder:  as noted above, each plaintiff claims that he or she suffered a specific loss resulting from the particular impact of COVID-19 and related state and local orders on their own individualized travel plans.  As to these types of facts—the ones that will dominate any litigation that proceeds past the pleading stage—there is no common evidence that would apply across the plaintiffs, putative class members, or these cases.

Finally, to the extent movant argues that the "worldwide COVID pandemic" is a sufficient common fact to justify centralization, that argument rests on an incorrect premise.  That cases may allegedly arise out of a particular phenomenon does not itself warrant transfer.  As the Panel has

---

*Water Rule:  Definition of "Waters of the United States,"*140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015).

previously recognized, the fact that actions arise from the same event "does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate." *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975); *see generally In re COVID BI*, 2020 WL 4670700.

### 2.    Plaintiffs Will Have To Prove Individualized Facts.

Movant argues that the pending actions "turn on the same alleged questions of fact." MB 7. But as explained above, the issues that movant identifies are legal, not factual, in nature. Moreover, even where the relevant policies contain similar language, a court resolving a plaintiff's coverage claims will be required to apply the policy's specific language to facts unique to each policyholder. The facts relating to the named plaintiffs alone in the pending actions demonstrate this point: each case requires consideration of unique factual circumstances affecting coverage under the subject policy. *See* pp. 2-3.

With respect to each of these factual circumstances, there is a clear lack of uniformity, and there will be manifold differences across the country (and even within states). The governmental guidelines and orders issued during COVID have been anything but consistent; even in particular states and localities, the applicable orders frequently have changed over time.[6] To the extent that courts need to reach the question of whether any of the various (and often contradictory) orders and guidelines restricted travel to the policyholder's destination or from the policyholder's

---

[6]    *See, e.g.*, Jasmine C. Lee, et al., *See How All 50 States Are Reopening (and Closing Again)*, The New York Times (updated Sept. 4, 2020), https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html.
    For example, in Texas (where two of the actions were brought), on April 1, 2020, Governor Abbott directed residents to "minimize" social gatherings and in-person contact, only to release a follow-up video clarifying that his order "require[d]" Texans to stay at home except to provide essential services or procure essential goods. *See* Gov. Abbott must clarify his coronavirus order to end confusion, Dallas Morning News (Apr. 1, 2020), https://www.dallasnews.com/opinion/editorials/2020/04/01/gov-abbott-must-clarify-his-coronavirus-order-to-end-confusion/.

residence or subjected a policyholder to a "quarantine" (often based upon specific state law) under the applicable policy, that will be an individualized determination that depends on, at a minimum, the specific terms of the orders in place at each location at particular times, and their effect on each policyholder.   Even policyholders supporting centralization in the COVID-19 business interruption litigation conceded that the cases presented "significant differences" including that "each state's lockdown [will] be[] constructed differently, and impact[] each plaintiff differently." *In re COVID BI*, Dkt. 19 at 3.

The lack of factual commonality also is evident from the various complaints and facts subject to judicial notice.  For example, plaintiff Sanchez allegedly cancelled her trip because her doctor suggested she stay home after her daughter allegedly came in contact with a person directly exposed to COVID-19, ***not*** because of any travel restriction in place in her home state of Kansas or in Texas, where she was scheduled to stay for a weeklong beach vacation.  *See* Dkt. 2-13 ¶ 24-32.  Indeed, by July 15, 2020 (the date Ms. Sanchez submitted her trip cancellation claim), Kansas had let its stay-at-home order expire and Texas had lifted its COVID-related restrictions on air travel.  *Id.* ¶¶ 24-25; *see also* Information for Travelers, Texas Department of State Health Services, *available at* https://www.dshs.state.tx.us/coronavirus/travelers.aspx.

Different facts also will come into play in the seven other cases identified by the movant. The respective policyholders in those cases are alleged to reside in ten different states and to have planned to travel to four different states, two foreign countries, and one United States territory. The courts will need to consider governmental orders and guidelines in effect in each of these localities in adjudicating the respective plaintiffs' claims.

There are yet more factual variations; as movant concedes (MB 3-4), some of the plaintiffs in the pending actions purchased their policies through a third-party website, such as VRBO.com

10

and HomeAway.com, that have their own COVID-19 refund and/or credit policies.  *See* Dkt. 2-15 ¶ 18; Dkt. 2-13 ¶ 19; Dkt. 2-9 ¶¶ 18-19; Dkt. 2-16 ¶ 16; Dkt. 2-14 1 ¶ 10.  These plaintiffs also may have received a partial or complete refund directly from the owner of the property in which the policyholder was supposed to be vacationing.  For example, plaintiff Flanigan alleges that she received a partial refund (consisting of the cleaning and damage deposit) directly from the property's owner; plaintiff Paterson alleges that she unsuccessfully tried to obtain a refund.  *See* Dkt. 2-15 ¶¶ 40-41; Dkt. 2-16 ¶¶ 33.[7]  Plaintiff Sheridan presents additional individualized issues since she was refunded her travel insurance premium, yet still seeks to recover the benefits under a policy she did not pay for.  Ex. B.

And although plaintiff Morris does not allege that he received a refund, the website of the cruise line company with which he booked his travel indicates that he should have received a future cruise credit or refund.  *See* Dkt. 2-12 ¶ 10; Voluntary And Temporary Pause Of Global Ship Operations, Seabourn, *available at* seabourn.com/en_US/news/operational-pause-faq.html. Nonetheless, Mr. Morris alleges that he is entitled to a refund of the portion of his premium attributable to post-departure risks because (in his view) Generali did not earn that portion since the cruise was cancelled.  Dkt. 2-12 ¶¶ 2, 5, 7.

As a result of these differences even among the eight putative constituent actions, if any of the cases survive the pleading stage, "facts relating to litigation . . . [are] likely to differ significantly" (*In re Monsanto PCB Water Contamination Litig.*, 176 F. Supp. 3d 1379, 1380 (J.P.M.L. 2016)).  Indeed, "[t]he very nature of the cases ensures that unique issues concerning each plaintiff's loss . . . will predominate, and will overwhelm any efficiencies that centralization

---

[7]     These factual variations also will cause differences in the nature of the pre-trial discovery, since some of the constituent cases are likely to involve discovery concerning such third-party sites, while other constituent cases will not.

might achieve." *In re: Fla.*, 325 F. Supp. 3d at 1368-69.

In sum, factual differences across the pending actions are numerous. In each case against Generali, the central issue will be one of contract interpretation. Moreover, because each of the eight constituent actions is a putative nationwide class action; each of them (and thus an MDL) could involve interpretation of policy language under the laws of each state and territory, which would raise myriad individualized issues. Based on the current record, it is clear that if there are any factual commonalities, they are "far outweighed by the unique facts and legal issues presented by each case," making Section 1407 transfer and consolidation inappropriate. *In re: Great West*, 176 F. Supp. 3d at 1372.

### B. An MDL Will Not Be More Convenient For Parties And Witnesses.

Centralization of cases against Generali likely would not be convenient—indeed, would likely be highly *in*convenient—for the parties, because centralization will uproot what are essentially localized insurance coverage disputes, predominantly from the jurisdictions where the policyholders and much of the evidence is located. *Nixon*, for example, involves a policy issued in Illinois to an Illinois resident, and case-specific discovery will be concentrated in Illinois. *Flanigan*, meanwhile, involves a policy issued in Ohio to an Ohio resident, and case-specific discovery will be concentrated in Ohio. Transfer of these actions out of the forum where discovery is localized would significantly inconvenience the parties and witnesses. *See In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. at 273; *In re Monsanto*, 176 F. Supp. 3d at 1380; *In re Rely Tampon Prods. Liab. Litig.*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982). Indeed for that reason and others, plaintiffs Nixon, Robbins, and Morris have opposed the motion to transfer. *See* MDL No. 2968, Dkt. 28, 30, 31.

Movant also appears to argue that transfer would be most convenient because the pending actions are putative nationwide class actions. MB 15. But significantly, here, a number of the

actions have been brought either by the same plaintiff's counsel in Houston (The Potts Law Firm) and two other Houston firms working with them. The potential risk of "inconsistent pretrial rulings with respect to the overlapping nationwide class claims" (*In re COVID BI*, 2020 WL 4670700, at *3) does not necessitate transfer when informal coordination would suffice.

There can be little doubt that the issue of overlapping nationwide class actions here is one of movant's counsel's own making. The coordination is clear. Movant's counsel (The Potts Law Firm, LLP) is headquartered in Houston, Texas (*see* https://www.potts-law.com/our-locations/); movant commenced her litigation in the Eastern District of Texas on July 20, 2020. *Sanchez* was filed on August 5 by lawyers employed by The Potts Law Firm. *Paterson* was filed on August 13 in the Eastern District of Texas by the Burnett Law Firm, also located in Houston, Texas; movant's counsel described themselves as "friends" of the Burnett Law Firm. *See* Pollock Decl. ¶ 6. *Flanigan* was filed on August 14 in the Northern District of Ohio by Raizner Slania LLP, another Houston law firm; movant's counsel represented that they were "co-counsel" on the *Flanigan* action, although they do not appear in the signature block of the complaint and have not filed a notice of appearance. *See id*. And, although the *Paterson* complaint was publicly filed in the Eastern District of Texas ***one day before*** the *Flanigan* complaint was filed in the Northern District of Ohio, the *Paterson* complaint includes an allegation that refers to Amy Flanigan as the "Plaintiff" and avers that she resides in Denton County, Texas. *See* p. 1. In practical terms, *Sheridan*, *Sanchez*, *Paterson*, and *Flanigan* should not be viewed as separate actions, because they contain nearly identical allegations and class definitions, and were created from the same template complaint by a group of affiliated counsel. Exs. A, C, D, E.

Put simply, movant's counsel is trying to generate an artificial impression that cases are organically being filed around the country to jockey for lead-counsel status in a hoped-for MDL

in their home state.  If the duplicative actions filed by coordinated law firms are put to one side, that would eliminate almost half of the actions that Generali currently faces, and three other plaintiffs—Morris, Nixon, and Robbins—oppose an MDL here.

Finally, even if there were truly eight member cases, an MDL would not be more convenient.  Although movant suggests that the Panel has "routinely ordered centralized proceedings in cases involving even fewer lawsuits" (MB 10), none of those MDLs involved insurance coverage litigation and many of the actions movant cites actually involved substantially *more* than eight pending actions.  *See, e.g.*, *In re Mobile Telecommcn's Techs., LLC Patent Litig.*, 222 F. Supp. 3d 1337, 1338 (J.P.M.L. 2016) (14 actions); *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d 1361, 1362 (J.P.M.L. 2016) (18 actions); *In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006) (19 actions).  Movant also mischaracterizes *In re: Boehringer Ingelheim Pharm., Inc. Fair Labor Standards Act (FLSA) Litigation* (MB 10); in fact, the Panel there *denied* centralization.  763 F. Supp. 2d 1377, 1379 (J.P.M.L. 2011).  Movant also relies upon *In re: Anheuser-Busch Labeling Marketing & Sales Practices Litigation* twice (MB 11), but repetition does not help her because the case readily is distinguishable.  There, the Panel found that centralizing the cases would help streamline "complex discovery concerning the calibration of the involved equipment and corporate policy with respect to labeling."  494 F. Supp. 2d 1371, 1371 (J.P.M.L. 2013).  By contrast, here the vast majority of discovery would be policyholder and locality-focused.  *See* pp. 2-3, 12 *supra*.

The remaining decisions in which the Panel centralized a comparable number of member cases into an MDL also are inapposite.  In *In re: 5-hour Energy Marketing and Sales Practices Litigation*, the Panel noted that "[a]ll responding parties *agree* that centralization of these actions is appropriate."  949 F. Supp. 2d 1357, 1357 (J.P.M.L. 2013) (emphasis added).  Similarly, in *In*

*re Fontainebleau Las Vegas Contract Litigation*, the Panel noted that "[t]en defendants . . . submitted a brief supporting centralization."  657 F. Supp. 2d 1374, (J.P.M.L. 2009).  Here, by contrast, Generali and a number of the plaintiffs in the constituent cases are strongly opposed to centralization.

In short, an MDL will not be more convenient for anyone except perhaps for plaintiffs' counsel in the four cases (all based in Houston, Texas) who appear to have purposefully coordinated the filing of separate actions in an effort to artificially increase the number of cases. And transfer here is certainly not necessary.  As the Panel recently explained, "[t]here are alternatives to centralization available to minimize any duplication in pretrial proceedings, including informal cooperation and coordination of the actions.  The parties also may seek to relate actions against a common insurer in a given district before one judge.  Such alternatives appear practicable as to these insurers, given the limited number of actions and districts involved as to each."  *In re COVID BI*, 2020 WL 4670700, at *4.  So too here.

### C.      An MDL Would Not Promote The Just And Efficient Conduct Of The Cases.

In considering whether centralization promotes judicial efficiency, the Panel considers four objectives:  (1) the elimination of duplicative discovery; (2) the avoidance of conflicting rules and schedules; (3) the reduction of litigation costs; and (4) the conservation of the time and effort of the parties, attorneys, witnesses, and courts.  *See In re AOL Time Warner, Inc. Sec. Litig.*, 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002).  An MDL here will not serve any of these objectives.

### 1.      An MDL Will Not Eliminate Duplicative Discovery Because The Vast Majority Of Discovery Will Be Plaintiff-Specific.

Movant summarily asserts that centralization will "eliminate" unspecified duplicative discovery.  MB 9.  To the extent any plaintiff's claims survive Generali's pending (*Nixon* and *Morris*, *see* p. 7) and anticipated Rule 12 motions, as explained above (at pp. 2-3, 12), resolving

discovery issues necessarily will implicate the particular circumstances in each case. These questions are specific to each policyholder; they are not factual questions suited for centralization. *See in re: Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014). Thus, even if these cases were transferred and centralized in one court, that court would need to wade through innumerable individualized factual issues for each case, undermining the efficiencies that Section 1407 is designed to achieve.

And even to the extent there is any "common" discovery of Generali, courts can informally coordinate to eliminate duplicative discovery: "Various mechanisms are available to minimize or eliminate the possibility of duplicative discovery even without an MDL. Notices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities." *In re: United Healthcare Servs., Inc. Harvoni (Ledipasvir and Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1341 (J.P.M.L. 2016). The Panel previously denied a motion to transfer where, as here, the only overlapping discovery would be targeted to the defendant insurer. *In re: Great West*, 176 F. Supp. 3d at 1372.

In short, the only purported factual commonality among these claims is that a Generali entity issued the policies. But to the extent that discovery is likely to be required in these cases, it will likely be policyholder- and locality-focused, ***not*** Generali-focused. Instead of promoting justice and efficiency, granting the motion to transfer would needlessly stall cases that are well underway and, in many instances, could be resolved before the end of the year.

### 2.   An MDL Will Not Avoid Conflicting Rules And Schedules.

Movant states, without explanation, that an MDL will "avoid inconsistent pretrial rulings and schedules." MB 9. To the contrary, since it is evident that plaintiffs' counsel in at least four of the actions already are cooperating (*see* pp. 1, 13), and two of those actions were filed by the

same law firm, alternatives to centralization, such as voluntary cooperation among the few involved counsel and courts, appear viable. *See In re: Rite Aid Corp. Wage & Hour Emp't Practices Litig.*, 655 F.Supp.2d 1376, 1377 (J.P.M.L. 2009); *In re COVID BI*, 2020 WL 4670700, at \*4.

The Panel frequently has denied requests for MDL treatment, even after finding common issues of fact, where informal coordination would suffice, "emphasiz[ing] that 'centralization under Section1407 should be the last solution after considered review of all other options,'" *In re Domestic Corp. Gas Absorption Refrig. Prods. Liab. Litig.*, 285 F. Supp. 3d 1358, 1360 (J.P.M.L. 2018) (citation omitted), such as informal cooperation and coordination. *See*, *e.g.*, *id.* ("cooperation among the few involved courts and counsel appears to be a workable alternative to centralization in this litigation"); *In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig.*, 293 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) ("Informal coordination of discovery and pretrial motions, if it is even needed, is preferable to centralization in these circumstances."); *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017) ("Opponents of centralization argue that unique factual and legal issues will predominate in this litigation, and that informal coordination is sufficient to minimize any overlap in pretrial proceedings.  We are persuaded that any overlapping pretrial proceedings have been and can continue to be handled through informal coordination."); *see also In re Prevagen Prods. Mktg. & Sales Practices Litig.*, 283 F. Supp. 3d 1379, 1380 (J.P.M.L. 2017) ("The small number of actions suggests that cooperation and informal coordination by the involved courts and counsel should be feasible.") (citing *In re: Crest Sensitivity Treatment & Protection Toothpaste Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1348, 1348 (J.M.P.L. 2012) as "denying centralization and listing examples of mechanisms available to prevent redundant discovery").

In *In re Crest*, the Panel denied centralization "[a]lthough all responding parties support[ed]" it given, *inter alia*, "the small number of involved actions and the correspondingly limited number of involved counsel."  867 F. Supp. 2d at 1348.  The Panel found that "informal cooperation among counsel and coordination among the involved courts" were "preferable to formal centralization," and that "[v]arious mechanisms are available to minimize or eliminate the possibility of duplicative discovery even without an MDL."  *Id.*  As the Panel explained, "[n]otices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities."  *Id.*  Because informal coordination is available here, centralization under Section 1407 is inappropriate.

### 3. An MDL Will Not Reduce Litigation Costs Or Conserve The Time And Effort Of The Parties, Attorneys, Witnesses, And Courts.

Again without any explanation, movant contends that transfer for coordinated treatment would "conserve the resources of parties, counsel, and courts" and "hasten progress in all actions." MB 9.  Movant is wrong.  Litigation is proceeding apace in each of the eight pending actions. Generali already has filed two motions to dismiss and anticipates filing additional such motions in the remaining cases.  To halt the progress of these cases in their home jurisdictions and delay resolution of such dispositive motions would hinder, not aid, efficiency.

## IV. If The Panel Creates An MDL, Transfer To The Southern District of New York, Not The Eastern District Of Texas, Is Appropriate.

For the foregoing reasons, Generali does not believe that transfer of these cases to a single district for MDL treatment is necessary or warranted.  If the Panel concludes otherwise, Generali respectfully submits that the Southern District of New York would be a suitable forum.  There currently are three cases pending in the Southern District of New York (*Morris*, *Robbins*, and *Swafford*), the most in any single district; the first of those cases (*Morris*) is assigned to Judge

Valerie E. Caproni.  Plaintiffs Robbins and Swafford support transfer to the Southern District of New York.  MDL No. 2968, Dkt. 28 at 7-9; *see id.* Dkt. 29 at 5-9.  Generali U.S. Branch is headquartered in New York, and Generali Global Assistance, Inc. is a New York corporation; the bulk of Generali's US-based witnesses and documents are in New York.

The Southern District of New York is an efficient docket, with median time from filing to disposition in civil cases of only 6.4 months, well below the nationwide average of 8.9 months.[8] The Southern District of New York also is accustomed to handling highly complex litigation and has been the site of over 170 completed MDLs.[9]  Moreover, particularly because three of the cases already are pending there, the Southern District of New York would be among the more convenient locations for litigants and their counsel.  And although movant suggests that the pending actions will proceed virtually in perpetuity (MB 15), the Panel should assume that COVID-related restrictions will at some point come to an end and that the parties, witnesses, and counsel would need to travel to a convenient forum.  If an MDL is created, the three major airports that are located within the New York City metropolitan area will promote convenience for everyone.  New York also has had many COVID-19 cases, ensuring that it will have a strong interest and familiarity with the issues in this case.

Generali also believes that Judge Caproni of the Southern District of New York, currently presiding over the *Morris* case, is well-suited to preside over a Generali MDL if the Panel chooses to create one.  Judge Caproni has experience handling MDLs, including *In re: London Silver*

---

[8]      U.S. Courts, U.S. District Courts—National Judicial Caseload Profile (June 30, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.

[9]      *See* U.S. Judicial Panel on Multidistrict Litig., Multidistrict Litigation Terminated Through September 30, 2019, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2019.pdf.

*Fixing, Ltd., Antitrust Litigation*, MDL No. 2573 and *In re: Commodity Exchange, Inc., Gold Futures and Options Trading Litigation*, MDL No. 2548.  Such experience with MDL litigation weighs in favor of transfer to her courtroom.  *See In re: Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009).

The Eastern District of Texas, by contrast, is not an appropriate forum for a Generali MDL. It takes longer for cases to get resolved in the Eastern District of Texas than in the Southern District of New York—with median time from filing to disposition in civil cases of 9.2 months, almost 50% longer than in the Southern District of New York.[10]  It also is much more difficult to get to the Eastern District of Texas, Marshall Division courthouse in Marshall, Texas than the Southern District of New York, Foley Square courthouse in New York City:  there are fewer direct flights, and fewer flights in general, to Marshall than there are to New York City.  Moreover, the Eastern District of Texas has been the site of only seven completed MDLs.[11]  Finally, although two member cases are pending in the Eastern District of Texas, as explained above (at pp. 1, 13) that appear to be the result of purposeful coordination between the parties.

## V.    Conclusion

For all the foregoing reasons, the Panel should deny the pending motion to transfer.  In the alternative, if the Panel decides to centralize these actions, Generali respectfully requests that the actions be centralized before Judge Caproni in the Southern District of New York.

---

[10]    U.S. Courts, U.S. District Courts—National Judicial Caseload Profile (June 30, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.

[11]    *See supra*, n.9.

Dated:  September 8, 2020                    MAYER BROWN LLP


                                            By:   */s/ Bronwyn F. Pollock*
                                                  Bronwyn F. Pollock


                                            Bronwyn F. Pollock
                                            MAYER BROWN LLP
                                            350 South Grand Avenue, 25th Floor
                                            Los Angeles, California 90071-1503
                                            Telephone:     (213) 229-9500
                                            Facsimile:     (213) 625-0248
                                            bpollock@mayerbrown.com

                                            *Attorneys for Defendants Assicurazioni
                                            Generali Group, S.p.A., Generali Global
                                            Assistance, Inc., Generali U.S. Branch, and
                                            Customized Services Administrators, Inc. d/b/a
                                            Generali Global Assistance & Insurance
                                            Services*